(Surrogate's Court, Saratoga County. December, 1903.)

1. WILLS—CONSTRUCTION—DISTRIBUTION PER CAPITA.

Testator, having sisters and children of deceased sisters surviving him, gave the balance of his estate to his "lawful heirs, to be divided equally among them." *Held*, that the term "lawful heirs" constituted a single class, so that the distribution must be per capita, and not per stirpes.

In the matter of the judicial settlement of Maria Griswold, administratrix. Decree for distribution entered.

Charles H. Sturges, for administratrix.

Charles W. Hulst, for executor of Mary Ann Cornell, one of the sisters of the deceased, and others

T. D. Trumbull, Jr., for administrator of Phœbe Bowen, one of the sisters of the deceased, and others.

James H. Bain, for Joseph Palmer, one of the children of Eliza Palmer, a sister of the deceased.

LESTER, S. Gardner Kingsley left a will dated April 22, 1879, by which he gave to his wife, Margaret, the use of his estate during her lifetime and provided further in relation thereto as follows:

"Fourth. I further give and bequeath unto my brother Joseph Kingsley one fourth of the balance of my estate at the decease of my said wife, or whenever my said estate is divided.

"Fifth. And the balance of my estate I give and bequeath unto my lawful heirs, to be divided equally among them."

He also made a codicil to his will in 1881, in which he provided:

"To the fifth clause I add the following words: Excepting the said Joseph Kingsley named in the fourth clause whose share of my estate is fully provided for in said fourth clause."

Gardner Kingsley died on the 26th day of April, 1884, leaving, him surviving, his widow, Margaret, named in his will; his brother, Joseph; six sisters; two daughters of Frances Wilcox, a deceased sister; and nine children of Eliza Palmer, another deceased sister. The widow, Margaret, named in the will of the deceased, is now dead, and the estate is ready to be distributed to those who are entitled thereto. The question arises as to the manner of distribution under the language of the will. The sisters and their representatives claim that the distribution should be per stirpes, and not per capita, while

the children of Eliza Palmer insist that the distribution should be per capita. Language similar to that which the testator employed in his will has been the subject of consideration in many reported cases, and several important rules have been established to serve as a guide in ascertaining the testamentary intention. It has been held that a devise to "heirs," whether it be to one's own heirs or to the heirs of a third person, designates not only the persons who are to take, but also the manner and proportions in which they are to take; and that, when there are no words to control the presumption of the will of the testator, the law presumes his intention to be that they shall take as heirs would take by the rules of descent. Daggett v. Slack, 8 Metc. (Mass.) 450. Accordingly it has been held that a gift to a person described as standing in a certain relation to the testator and to the heirs of another person standing in the same relation to him imports an intention upon the part of the testator that the persons named and described shall take per stirpes; while the general rule is that a gift to a person described as standing in a certain relation to the testator and to the children of another standing in the same relation imports an intention that the legatees shall take per capita. Clark v. Lynch, 46 Barb. 69; Ferrer v. Pyne, 81 N. Y. 281; Vincent v. Newhouse, 83 N. Y. 505; Woodward v. James, 115 N. Y. 346, 22 N. E. 150; Bisson v. W. S. R. R. Co., 143 N. Y. 125, 38 N. E. 104. The language of the present will is, however, clearly distinguishable from that involved in the foregoing cases. This is not a case where a gift is made to one person standing in a certain relation to the testator and to the children or heirs of another person standing in the same relation to him. The testator has grouped the objects of his bounty into a single class, and described them by the words "my lawful heirs." The adjective "lawful" evidently refers to "heirs." This language would, however, doubtless import a distribution per stirpes if it stood alone, but the testator has taken pains to add the words "to be divided equally among them."

The case of Bodine v. Brown, 12 App. Div 335, 42 N. Y. Supp. 202, affirmed 154 N. Y. 778, 49 N. E. 1093, is a satisfactory and controlling authority as to the proper construction of the present will. In a case where a gift has been made to one or more persons standing in a certain relation to the testator, who are named in his will, and one or more groups of heirs of deceased persons, who stood in the same relationship to him as those who are named, a direction to equally divide might be satisfied by an equal division among the individuals and groups, giving to each group the same share as to each individual named; but such an interpretation of the present will is impossible, seeing that individuals and groups are not brought together, but that all the objects of the testator's bounty are comprehended in a single class, "my lawful heirs," and the residuary estate is directed "to be divided equally among them." It would contravene such a direction to give to one of these heirs seven times as much as to another. No possible effect can be given to the words requiring an equal division among the members of this class, except by giving to each one of them the same amount as to each of the others. In all the cases where the words "to be equally divided" have been

employed, and it has been said that the rule of a per capita division "will yield to a very faint glimmer of a different intent," some method of satisfying those words by an equal division among individuals and groups of heirs mentioned in the will has been possible. In the present case no such method of satisfying these words is possible, and to depart from a per capita distribution is to depart from the plain language of the will. That language, it seems to me, is quite opaque to the glimmer of any contrary intent; and I find no reason for searching among and speculating upon the testator's subsequent acts and declarations for his intention when he has clearly expressed it in language untainted with ambiguity. We may look at the acts and declarations of a testator to find his intention when his language is ambiguous, but not to find an intention different from that which he has plainly expressed. In the present case the testator used the words "lawful heirs" to describe those to whom he gave his residuary estate, though at the time of making his will his estate consisted principally of personal property, and when he made the codicil to his will and at the time of his death he had no real estate at all. The persons who would have inherited the real estate of which he might have died seised in the absence of a will were, however, the same as those who would have been entitled to share in the distribution of his personal estate, and the proportions in which they would have inherited real estate are the same in which they would have been entitled to the distribution of his personal estate. No question arises, therefore, as to the identity of the individuals whom he intends to comprehend within the group of his lawful heirs. In my opinion, the testator used the words "my lawful heirs" merely to designate the individuals who should take, and he intended to fix the quantity of interest which should devolve upon each by the words "to be equally divided among them." Having thus used the words "lawful heirs" solely to identify the individuals who were to take as legatees, they are to be deemed to take as purchasers, as if all had been named, as tenants in common, and per capita.

It has been urged that the codicil, which modifies the fifth clause of the will by adding thereto the words, "excepting the said Joseph Kingsley, whose share of my estate is fully provided for," illuminates the intention of the testator, and shows that he could not have had in his mind a distribution that would have divided his estate into 17 shares, for he has given his brother a fourth, and refers to this fourth as providing for his brother's share. But, even under a division of the estate per stirpes, each of the surviving sisters would get but one-eighth of three-fourths, or about one-eleventh of the residuary estate. This disparity between the one-fourth given to Joseph and the one-eleventh given to each of the sisters is so great as to make it evident that the testator cherished no intention of making each of the sisters' shares equal to Joseph's, and is sufficient to rob the argument of any force. The distribution among the persons described by the testator must be per capita, and a decree may be submitted accordingly, to be settled upon notice.

Decreed accordingly.